UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEBRA R. ROBINSON,            )
                             )
            Plaintiff,        )
                             )
        v.                    )        No. 4:17CV2648 HEA
                             )
                             )
NANCY A. BERRYHILL,          )
Acting Commissioner of        )
Social Security Administration, )
                             )
            Defendant.        )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court, pursuant to the Social Security Act ("the

Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), authorizing judicial review of the final

decision of the Commissioner of Social Security denying Plaintiff's Title XVI

application for Supplemental Security Income ("SSI") under 42 U.S.C. §§ 1381 et

seq. For the reasons discussed below, the Commissioner's decision is affirmed.

Plaintiff originally filed a claim for Supplemental Security Income benefits

under 42 U.S.C. §§ 1381 et seq., on September 15, 2010. After the claim was

denied Plaintiff filed a request for a hearing which was held and another

Administrative Law Judge issued an unfavorable decision. Plaintiff requested

review by the Appeals Council, which request was denied on February 3, 2014. Pursuit of that claim ended.

On April 3, 2014 Plaintiff filed a claim for supplemental security benefits alleging disability beginning November 30, 2012. It is the denial of that claim which is the subject of this proceeding.

On August 17, 2016 a hearing was conducted by ALJ Robert G. O'Blennis in Creve Coeur, Missouri. Plaintiff appeared in person and with counsel. Also in appearance was Harold Taylor, a Vocational Expert.

Plaintiff was born on July 31, 1956. She was 60 years old at the time of hearing on August 17, 2016. Plaintiff has a tenth grade education and was not successful in securing her GED, although she attempted on two occasions. She has had work training and experience as a beautician. She was about 57 years old at the time of onset. There is testimony that Plaintiff lives with her 22 year old grandson.

Plaintiff testified that the basis for her condition is the result of a fall she experienced while working at a fast food restaurant. She noted it was a real bad fall and "messed" up three discs in her back. Surgery was recommended but she opted for therapy, exercises and chiropractic care.

There was testimony from Plaintiff that she takes gabapentin and ibuprofen. She also sees Dr. Spearman, Dr. Walls, and Dr. Hilliard for treatment of her

malady. She testified that she also takes sertraline and Focalin for her depression as well as something for her anxiety.

During her examination Plaintiff testified she had difficulty mopping, sweeping, lifting clothes,  and  wringing a mop because it was too difficult on her arms and hands. On the issue of her mental state she testified she  hears voices all the time all day; that she was traumatized as a child who was the victim of sexual abuse; that she doesn't like to be around people and doesn't want to be around people. She further testified that as long as she stays on her meds her psychiatric condition stays the same.

Next, the Vocational Expert, Harold Taylor, testified without any objection to his qualifications.  Taylor testified as to the past work of Plaintiff as a phlebotomist which is light exertional and semiskilled. She also had past work as a receptionist, which is sedentary and semiskilled.  Further, based upon a proper hypothetical, with specific limitations of: only lifting 50 pounds on occasion  and 25 pounds frequently; occasionally climbing ramps and stairs; occasionally stooping, kneeling, crouching, and crawling;  avoiding climbing ladders, ropes, and scaffolds; avoiding working at unprotected dangerous  height and around unprotected dangerous machinery; frequent reaching in front  or bilaterally with the left upper extremity; and the person should avoid jobs with whole body vibration, the Vocational expert testified there would be work available for

Plaintiff, including her past relevant work. However, if there was further limitation to medium level with restrictions of occasional use of bilateral upper extremities and lifting and reaching there would be no jobs available. If the person was limited to simple and/or repetitive which did not require close interaction with the public her past work would be excluded but there would be jobs available at the medium level of exertion. Mr. Taylor also testified that the work was consistent the DOT and Selected Characteristics of Occupation.

Accordingly, the ALJ held, on November 4, 2016, that Plaintiff was not under any disability since the date the application was filed on April 3, 2014. The ALJ found that Plaintiff had severe impairments which included bilateral osteoarthritis of glenohumeral and acromioclavicular joints and major depressive disorder. The ALJ found that she did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1. The ALJ determined that Plaintiff retained the RFC to perform medium work except she can lift and carry fifty pounds occasionally and twenty-five pounds frequently. In addition she can climb ramps and stairs but never ladders, ropes, or scaffolds. Plaintiff can occasionally stoop, kneel, crouch, and crawl. She has to avoid work at unprotected heights and around dangerous machinery. She can frequently reach in front and laterally bilaterally. She can reach overhead bilaterally frequently, but not repetitively. The ALJ concluded

there were no limits on handling and fingering objects and she must avoid work that would expose her whole body to vibrations. Finally, the ALJ found that Plaintiff was able to perform work that involves simple and/or repetitive tasks with no close interaction with people. Consequently, the ALJ found that Plaintiff was not disabled.

On September 27, 2017, the Social Security Appeals Council denied Plaintiff's request for review. Plaintiff has exhausted her administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner subject to judicial review.

## Statement of the Issues

The general issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The specific issues in this case are whether there is substantial evidence in support of the Residual Functional Capacity determination and whether the ALJ properly considered medical opinion evidence in making that determination.

As explained below, the Court has considered the entire record in this matter. The decision of the Commissioner is supported by substantial evidence and it will be affirmed.

## Standard for Determining Disability

The standard of review here is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). Substantial evidence is less than preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *See id.*

The Court must consider evidence that both supports and detracts from the Commissioner's decision but cannot reverse the decision because substantial evidence also exists in the record that would have supported a contrary outcome, or because it would have decided the case differently. *See Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). If the Court finds that the evidence supports two inconsistent positions and one of those positions represents the Commissioner's findings, the Court must affirm the Commissioner's decision. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The Eighth Circuit has stated that "[w]e defer heavily to the findings and conclusions of the Social Security Administration." *Id.* (quoting *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010)).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the

"listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a) (1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e).  At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a) (4) (iv), 404.1520(f), 416.920(a) (4) (iv), 416.920(f); *McCoy*, 648 F.3d at 611.  If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step.  *Id*.  At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

**RFC**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p. An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96–7p.

A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully support them. The absence of objective medical evidence is just one factor to be considered in evaluating the claimant's credibility and complaints. The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the claimant's prior work record and observations by third parties and treating and examining physicians relating to such matters as:

(1) The claimant's daily activities;

(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) Any precipitating or aggravating factors;

(4) The dosage, effectiveness, and side effects of any medication; and

(5) The claimant's functional restrictions.

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir.2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See *Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F .3d 687, 697 (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir.2006).

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005). "It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he

considered all of the evidence." *Id*. The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ need only acknowledge and consider those factors. *Id*. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988). The burden of persuasion to prove disability and demonstrate RFC remains on the claimant. *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

If the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

If the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The

Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

If the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the

pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). The Commissioner makes this determination by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. § 416.920a(c)(3).

# Decision of the ALJ

In a decision dated September 27, 2017, the ALJ determined that Plaintiff was not disabled under the Social Security Act. The ALJ acknowledged that the administrative framework required a five-step, sequential process in evaluating Plaintiff's claim. At step one the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity from since April 3, 2014, the date of application. At step two, the ALJ found Plaintiff had the following severe impairments during the relevant period: bilateral osteoarthritis of glenohumeral and acromioclavicular joints and major depressive disorder. At step three the ALJ found that she did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1. The ALJ determined that Plaintiff retained the RFC to perform medium work except that she can lift and carry fifty pounds occasionally and twenty-five pounds frequently. She can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She must avoid work at unprotected heights and around dangerous machinery. She can frequently reach in front and laterally bilaterally. She can reach overhead bilaterally frequently, not repetitively. There are no limits on handling and fingering objects. She must avoid work that would expose her whole body to vibrations. She is able to perform work that

involves simple and/or repetitive tasks and with no close interaction with the public.

At step four the ALJ found there were jobs available for Plaintiff in the national economy considering her age, education, work experience, and residual functional capacity. At step five the ALJ found that Plaintiff has not been under a disability as defined in the Social Security Act since April 3, 2014.

## A. Was There Substantial Evidence in Support of The ALJ Residual Functional Capacity Determination?

Plaintiff asserts that the ALJ was erroneous in determining her physical and mental RFC because it was unsupported by the medical evidence and because he erred in weighing medical opinions in making that determination. Thus, Plaintiff suggests that there is not substantial evidence supportive of the ALJ decision.

The ALJ weighed and discussed various medical opinions (Tr. 90-93). It is the ALJ's function to resolve conflicts among "the various treating and examining physicians." *Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995) (citing *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989)). As noted by Defendant "[t]he Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quotation omitted). However, there is no requirement that an RFC finding be supported by a specific medical opinion.

*Hensley v. Colvin*, No. 15-2829, 2016 WL 3878219, at *3 (8th Cir. July 18, 2016); *Myers. V. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013);*Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012).

The record fully and substantially supports the finding of the ALJ. The ALJ weighed and discussed various medical opinions (Tr. 90-93). Further, the ALJ properly resolved conflicts between and among various treating and examining physicians.

As to Plaintiff's asserted mental limitations, the ALJ engaged in a discussion of the May 2014 findings and opinion of consultative examining psychologist, Mark Hammerly, Ph.D., who assessed Plaintiff with a global assessment of functioning (GAF) value of 50 which is indicative of serious to marked symptoms, estimated Plaintiff was in the borderline range of intellectual functioning, noted her ability to remember and carry out instructions was below average and her ability to maintain concentration and pace was likely in the borderline range, noted she had significant trouble relating to him during the evaluation, would be expected to respond in less than an appropriate manner to ordinary work pressures with a significant increase in coping ability, and noted that it was questionable whether Plaintiff had sufficient information, judgment, and common sense reasoning ability to live independently and was barely competent (Tr. 89-91, 455-65.

The record plainly demonstrates that little evidentiary weight being assigned to Dr. Hammerly was appropriate and the ALJ sufficiently established such. The ALJ noted inconsistent positions between Dr. Hammerly's GAF score of 50, indicative of serious to marked symptoms and an estimation of a borderline range of intellectual ability, for Plaintiff and matters in record. He also noted her ability to remember and carry out instructions was below average and her ability to maintain concentration and pace was likely in the borderline range, noted she had significant trouble relating to him during the evaluation, would be expected to respond in less than an appropriate manner to ordinary work pressures with a significant increase in coping ability, and noted that it was questionable whether Plaintiff had sufficient information, judgment, and common sense reasoning ability to live independently and was barely competent.  Some of the  inconsistencies noted by the ALJ were the following:  Hammerly noted she was well-educated and would have no trouble managing funds;  Plaintiff also had a valid driver's license and drove herself to the examination; Plaintiff passed her written drivers' test and a test to be a phlebotomist, and that she received a license in hairdressing; the mental status examination was essentially normal and showed no significant deficits in cognition.  The record reflects through substantial evidence that the ALJ appropriately weighed Dr. Hammerly.

The record clearly supports the minimal weight the ALJ gave to the opinion of treating counselor Geannette Walls, LCSW. Walls noted Plaintiff had moderate to marked limitations of functioning, suffered chronic pain and mental health issues that prevent her from working a full time job, and had difficulty working around people. The controlling weight afforded to a 'treating source' 'medical opinion' is reserved for the medical opinions of the claimant's own physician, psychologist, and other acceptable medical source." ((*emphasis added*) *Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006)). The record and the credentials of Geannette Walls clearly demonstrate she is not one who could be considered a medical source. In addition, the ALJ sufficiently demonstrated the inconsistency of Walls' findings and the record, including Dr. Hammerly.

Patricia Semmelman, Ph.D., reviewed the evidence on June 10, 2014, and found Plaintiff would retain the abilities to understand, remember, and carry out tasks in situations where duties were relatively static and changes could be explained, could perform tasks that did not require prioritization or more than daily planning, and could relate to coworkers and supervisors on a superficial level (Tr. 95, 248, 253). The ALJ gave great weight to the Semmelman opinion. Opinions from state agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of

treating or examining sources. *Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014)(*citing Social Security Ruling* 96-6p, 1996 WL 374180, at *3).

Review of the record indicates the ALJ considered opinions of the non-examining state agency physicians such as Louis Goorey, M.D., who reviewed the medical evidence and found Plaintiff was limited to light work with no overhead reading and limited gross manipulation. It was concluded that this doctor's conclusions were not based on treatment or examination and found more restrictive than supported by the overall record. Dr. Shafransky, consultative examining physician, found Plaintiff had no decreased grip strength, full ranges of motion in her hands and arms, and normal fine coordination in both hands/fingers, and only minimal degenerative changes in the small joints of her hands.

In August of 2014 a non-examining state agency physician, Fredric Simowitz, M.D., reviewed evidence and concluded Plaintiff was limited to a range of medium work (Tr. 96, 265-68). The ALJ considered the entire record including the findings of Dr. Simowitz. Great weight was given to this opinion and properly so as it was consistent with the other evidence in this hefty record. The ALJ acted properly in relying on this opinion evidence. *See Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016).

The record is replete with an abundance of evidence supportive of the ALJ finding. As noted by defendant , on February 4, 2015,  Plaintiff  denied other

health problems and denied a history of illness (Tr. 92, 490-93) while being treated at Homer G. Phillips for being exposed to blood.  She also reported that she had no physical disability, denied depression, and had normal activities of daily living (Tr. 92, 490). Although a claimant's subjective complaints cannot be disregarded solely because they are not fully supported by objective medical evidence, they may be discounted if there are inconsistencies in the record as a whole. *See Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011).

There is substantial evidence in the record to support the RFC finding by the ALJ.

## B. Was The Determination of The Ability to Perform Other Work Properly Determined by the ALJ.?

Part and parcel of, but not conflated with, the RFC  issue presented by Plaintiff is the issue of the ALJ determination of the ability of Plaintiff to perform other work. It is abundantly clear from the record as a whole that the ALJ was keenly aware of the burden shifting aspect of the analysis relating to performance of other work.  In this regard the ALJ utilized, factoring in the age, education, work experience and RFC, a vocational expert.   Testimony in this area from a vocational expert based upon a properly phrased hypothetical question constitutes substantial evidence supporting the ALJ's decision. *See Milam v. Colvin*, 794 F.3d 978, 985-86 (8th Cir. 2015).

Here, the record demonstrates that the ALJ put forth a proper hypothetical with all necessary factors, including the impairments, for the vocational expert to consider. The vocational expert's testimony that Plaintiff could perform work existing in significant numbers, is substantial evidence in support of the ALJ's determination. *See Martise*, 641 F.3d at 927; *Gragg v. Astrue*, 615 F.3d 932, 941 (8th Cir. 2010). The conclusions of the ALJ must remain untouched as they are supported by substantial evidence. *See Milam*, 794 F.3d at 983

## Conclusion

The ALJ decision is supported by substantial evidence on the record as a whole. The ALJ's decision will not be reversed for the reasons set forth in this Opinion, Memorandum and Order. The decision of the ALJ denying Plaintiff's claims for benefits is affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment in accordance with this Opinion, Memorandum and Order is entered this same date

Dated this 4th day of March, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE